**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| AMANDA STEVENS, | |
| **Plaintiff,** | **Civil Action No. 1:26-cv-01692** |
| v. | **Judge Sara L. Ellis** |
| **LEGACY HEALTHCARE FINANCIAL SERVICES, LLC,** | |
| **Defendant.** | |

**STEVENS' [PROPOSED] SURREPLY TO DEFENDANT'S REPLY
IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

**1.     Introduction.**

Legacy's Reply relies on new evidence—the Management Services Agreement ("MSA") with PHE Skilled Nursing Facility, LLC ("APH") and the Supplemental Declaration of Kevin McInerney—to advance a new argument: that the MSA here is identical to the agreement in *Rodriguez v. Legacy Healthcare Financial Services*, *LLC*, No. 22-CV-04532, 2023 WL 3864948 (N.D. Ill. June 7, 2023), and therefore *Rodriguez* controls. See Doc. 29 at 1–9. That argument fails for two reasons.

First, Legacy ignores *Spears v. Damen Healthcare Group, LLC*, No. 22-CV-4932, 2025 WL 318708 (N.D. Ill. Jan. 28, 2025), which distinguished *Rodriguez* and held that the employer inquiry is too fact-intensive to resolve at the pleading stage where a plaintiff plausibly alleges a single-employer relationship. Second, Legacy misrepresents the factual record by asserting that the "facts and circumstances underlying the *Rodriguez* decision are identical," while disregarding a critical distinction recognized in *Spears*: common ownership. *Compare* Doc. 29 at 1 *with* Doc. 27 at 7–8. Because Stevens plausibly alleges that Legacy and APH share ownership, management, and operational integration, *Rodriguez* does not control, and dismissal is unwarranted.

**2.      Legacy "identical MSA" argument misreads *Rodrigez* and ignores *Spears*.**

For the first time on Reply, Legacy argues the MSA with APH is identical to its MSA with LeGrange in *Rodriguez*, and therefore the Court must dismiss Stevens' claims for lack of jurisdiction. That framing omits critical factual and procedural differences.

In *Spears*, Judge Rowland held that—despite defendant's reliance on an MSA that disclaimed responsibility for the facility's "operations"—the plaintiff plausibly alleged that the management company and facility operated as a single employer under the four *South Prairie* factors: interrelation of operations, common management, centralized control of labor relations, and common ownership. 2025 WL 318708 at *3 (citing *South Prairie Constr. Co. v. Int'l Union of Operating Engineers*, 425 U.S. 800, 803 (1976)).

Specifically, *Spears* emphasizes that whether a management company is an "employer" is a fact-intensive inquiry that often cannot be resolved on a Rule 12 record, especially where the plaintiff plausibly alleges overlapping management and common ownership. *Id.* at 3, 7. The court expressly noted that single-employer status "is characterized by the absence of an arm's-length relationship" and that the question is "more appropriately resolved for summary judgment[.]" *Id.* at 3.

Consistent with that reasoning, *Spears* distinguished *Rodriguez* and declined to resolve the employer issue at the pleading stage where the record supported a plausible single-employer theory. 2025 WL 318708 at *5–7; *see also* Doc. 27 at 7–8.

**a.  Unlike *Rodriguez*, Stevens demonstrates common ownership.**

*Rodriguez* turned heavily on the absence of evidence that Legacy and LaGrange shared

common ownership, commingled assets, or jointly controlled labor relations.[1] 2025 WL 318708 at *4. Judge Gettleman emphasized, among other things, that: (1) LaGrange's notice filings identified different owners than Legacy; (2) there was "no evidence" that Legacy and LaGrange had the same owners, jointly processed payroll, or shared bank accounts; and (3) the record showed, at most, a business relationship rather than an employment relationship between Legacy and the plaintiff. *Id.* at *2-4.

By contrast, Stevens alleges specific facts suggesting common ownership, shared management, and non-arm's-length integration between Legacy and APH:

- Illinois Secretary of State filings show that Legacy and APH share the same manager (Menachem Shabat), registered agent, and principal address.[2]
- Medicare's Care Compare data identifies APH as part of the "Legacy Healthcare" chain, defined as a group of facilities "connected through common owners and operators" (affiliated entities).
- Legacy's own website advertises "Healthcare Career Opportunities" at "Legacy or one of the facilities in our network," including positions at APH.

Doc. 27 at 7-8.

These allegations, which must be accepted as true at the Rule 12(b)(6) stage, support an inference that Legacy and APH are not operating at arm's length but instead share ownership, management, and integrated operations. That is precisely the kind of record that led the *Spears* court to distinguish *Rodriguez* and deny dismissal. *See* 2025 WL 318708 at *5-7.

Legacy's assertion that the "facts and circumstances" here are identical to *Rodriguez* is therefore misleading. Doc. 29 at 1. Critically, Legacy ignores the presence of common ownership alleged here, whereas in *Rodriguez* "there [was] no evidence to suggest that LaGrange and Legacy have the same owners." 2023 WL 3864948 at *4.

**3.     Legacy's Reply confirms that dismissal is premature.**

---

[1] In *Rodriguez*, the court only granted Legacy's motion to dismiss after the parties had conducted limited discovery.

[2] Further, *Rodriguez* admits that one of its owners, "Menachem Shabat may have ownership interests in some unnamed Legacy-managed facilities." 2023 WL 3864948 at *2.

At most, Legacy's Reply reinforces that dismissal is premature and that discovery is necessary. Legacy relies on MSA language stating that APH is "solely and exclusively responsible" for facility operations, but such contractual disclaimers must be evaluated in light of the parties' actual relationship. See Rodriguez, 2023 WL 3864948 at *4–9; cf. Spears, 2025 WL 318708 at 5–7.

The MSA and Supplemental Declaration do not disprove Stevens' allegations as a matter of law. Instead, they underscore a factual dispute regarding how Legacy and APH operate in practice— including Menachem Shabat's role and who controls payroll, policies, and working conditions. That is precisely why Spears held that the employer inquiry should proceed on a developed record. 2025 WL 318708 at 3, 7.

Stevens has plausibly alleged that Legacy was her employer or joint employer under the FLSA, IMWL, and IWPCA, applying the FLSA's broad economic reality test. *See* Doc. 1 ¶¶ 2, 39– 40, 53–54; Doc. 27 at 6–8. Under *Spears*, those allegations are sufficient to survive a motion to dismiss notwithstanding contractual disclaimers in the MSA, and *Rodriguez* does not compel a different result given the materially different facts.

### 4.      Conclusion.

For these reasons, Legacy's motion to dismiss should be denied.

Dated: June 25, 2026                    Respectfully submitted,


                                        By: /s/ *Richard M. Schreiber*
                                        Michael A. Josephson
                                        Andrew W. Dunlap
                                        Richard M. Schreiber
                                        JOSEPHSON DUNLAP LLP
                                        5847 San Felipe St., Suite 2400
                                        Houston, TX 77057
                                        713-352-1100
                                        mjosephson@mybackwages.com
                                        adunlap@mybackwages.com
                                        rschreiber@mybackwages.com

- 5 -

Richard J. (Rex) Burch
BRUCKNER BURCH, PLLC
5847 San Felipe St., Suite 2400
Houston, TX 77057
713-877-8788
rburch@brucknerburch.com

Douglas M. Werman
Maureen A. Salas
WERMAN SALAS P.C.
77 W. Washington St.
Ste 1402
Chicago, IL 60602
312-419-1008
msalas@flsalaw.com
dwerman@flsalaw.com